IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

MICHAEL KEITH RYAN                                                        PLAINTIFF

V.                                                     CIVIL ACTION NO. 1:14cv14-SAA

CAROLYN W. COLVIN, Acting Commissioner of
 Social Security                                                          DEFENDANT

## MEMORANDUM OPINION

This case involves an application under § 205(g) of the Social Security Act, as amended 42 U.S.C. § 405(g), for judicial review of the decision of the Commissioner of Social Security denying the application of plaintiff Michael Keith Ryan for disability insurance benefits under Title II of the Social Security Act. This District Court's jurisdiction over plaintiff's claim rests upon 28 U.S.C. § 1331. In accordance with the provisions of 28 U.S.C. § 636 (c), both parties consented to have a United States Magistrate Judge conduct all proceedings in this case, including an order for entry of a final judgment. Therefore, the undersigned has authority to issue this opinion and the accompanying final judgment.

## PROCEDURAL HISTORY

Plaintiff protectively filed his application for disability benefits on February 17, 2011. Docket 6, pp. 118-124. His alleged onset date is April 2, 2010. *Id.* at p. 118. He claims he is disabled due to depression, high blood pressure, a plate and screws in his hip, leg numbness and back problems. Docket 6, p. 155. Plaintiff's claim was denied initially and on reconsideration. *Id.* at pp. 67-69, 75-85. Plaintiff requested a hearing before an Administrative Law Judge (ALJ). *Id.* at 62-63. The hearing was held on September 6, 2012, in Tupelo, Mississippi before ALJ Rebecca B. Sartor. *Id.* at 28. Plaintiff appeared and was represented by attorney Thomas H.

1

Comer, Jr.. In addition to the plaintiff's testimony, a vocational expert (VE), Barbara Holmes, testified at the hearing. *Id.* On September 14, 2012, the ALJ issued her decision denying plaintiff's claim. Docket 6, pp. 9-22. Plaintiff timely requested review of the ALJ's decision by the Appeals Council, which was denied on August 18, 2007. *Id.* at pp. 7-8, 1-3. The Appeals Council's denial of the petition for review perfected the ALJ's decision as the final decision of the Commissioner. It is now ripe for the court's review.

## **FACTS**

Plaintiff was born on September 17, 1985. Docket 6, p. 151. He was twenty-four years old on his alleged disability onset date and twenty-six on the date of the Commissioner's final decision. *Id.* He has a high school education, and his previous employment included material handler, HVAC helper, cashier, and stock clerk. *Id.* at 36, 156. He alleges that he became disabled due to depression, high blood pressure, a plate and screws in his hip, leg numbness and back problems. *Id.* Plaintiff is approximately six feet tall, and his weight has fluctuated between 245 and 330 pounds. *Id.* at 37, 155.

At the hearing, the plaintiff testified that he had an automobile accident in April 2010 which resulted in a fractured hip that had to be surgically repaired and a displaced kneecap. Docket 6, pp. 40-41. As a result of the accident, plaintiff was hospitalized for two weeks and then bedridden for approximately 6 months. *Id.* at 40. Medical records show that plaintiff was treated at the Med in Memphis immediately following the accident and then at Campbell Clinic in Collierville, TN for several months after the accident for follow-up. Docket 6, pp. 229-250, 251-285. He has been seen by Dr. Sloan at the Easy Care Clinic in Corinth, MS at the request of his attorney for an evaluation relating to his impairment, prognosis, and possible future medical

treatment. Docket 6, pp. 286-304, 399-425, 452-458, 490-533, 546-562. In July 2011, Dr. Sloan indicated that plaintiff complained of shortness of breath and diagnosed him with mild COPD, yet Spirometry testing showed plaintiff had minimal obstructive lung defect. *Id.* at 412. Dr. Sloan's June 20, 2012 record indicates plaintiff had gained weight and on that date weighed 330 pounds. *Id.* at 412 & 550. On January 6, 2011, Dr. Sloan completed a Medical Source Statement opining that plaintiff had a "permanent disability." *Id*. at 560. The record also contains a report from state agency medical consultant Dr. Culpepper, who reviewed the available medical evidence and found that although plaintiff had some residual soreness, pain and restrictions in his right hip, he retained the physical residual functional capacity [RFC] to perform light work. Docket 6, pp. 439-446.

In her decision, the ALJ found that the plaintiff suffered from "severe" impairments of "degenerative joint disease resulting from injuries sustained in a motor vehicle accident, depression and post-traumatic stress disorder (PTSD)." Docket 6, p. 14, Finding No. 3. However, after review of all the evidence and the testimony of a vocational expert (VE), she held that these impairments, singly or in combination, did not meet or medically equal the severity of one of the listed impairments in 20 CFR 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1526). Docket 6, p. 17, Finding No. 4. The ALJ considered the record as a whole and determined the plaintiff retained the RFC to

> perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant can lift/carry and push/pull up to 10 pounds occasionally and less than 10 pounds frequently. He can sit for a total of 6 hours in an 8-hour day and stand/walk for a total of 6 hours in an 8 hour day. The claimant can occasionally climb ramps and stairs, but never ladders, ropes or scaffolding. He can occasionally balance. Despite his mental limitations, the claimant can occasionally interact with co-workers, occasionally perform work related decision-making tasks and adjust adequately and appropriately to occasional changes in the workplace. He can

3

sustain attention, concentration and pace sufficiently to perform routine, repetitive
tasks, but should avoid working at jobs requiring a strict production pace.

Docket 6, pp. 18-19, Finding No. 5. Using this RFC and considering plaintiff's age, education, and work experience, in addition to relying to the testimony of a VE, the ALJ found that the plaintiff was capable of performing other work and therefore was not disabled as defined by the Social Security Act. Docket 6, pp.21-22. Plaintiff argues that if one considers all of his impairments and symptoms collectively, the ALJ erred, and the decision should be remanded for further consideration because her determination is not supported by substantial evidence, she did not consider plaintiff's obesity as required by SSR 02-1p, she incorrectly discounted treating physician Dr. Sloan's medical assessment and she did not properly consider "other work" the plaintiff could perform at step five of the evaluation process.[1]

## DISCUSSION

1. Substantial Evidence

The court considers on appeal whether the Commissioner's final decision is supported by substantial evidence and whether the Commissioner used the correct legal standard. *Muse v. Sullivan,* 925 F.2d 785, 789 (5th Cir. 1991); *Villa v. Sullivan,* 895 F.2d 1019, 1021 (5th Cir. 1990). "To be substantial, evidence must be relevant and sufficient for a reasonable mind to accept it as adequate to support a conclusion; it must be more than a scintilla but it need not be a preponderance . . . ." *Anderson v. Sullivan,* 887 F.2d 630, 633 (5th Cir. 1989) (citation omitted). "If supported by substantial evidence, the decision of the [Commissioner] is conclusive and must be affirmed." *Paul v. Shalala,* 29 F.3d 208, 210 (5th Cir. 1994) (citing *Richardson v. Perales,*

---

[1]Plaintiff's argument regarding the correct date on an exhibit is not reversible error and need not be considered. Docket 6, p. 2.

4

402 U.S. 389, 390 (1971)). Conflicts in the evidence are for the Commissioner to decide, and if substantial evidence is found to support the decision, the decision must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court may not re-weigh the evidence, try the case *de novo*, or substitute its own judgment for that of the Commissioner,[2] even if it finds that the evidence leans against the Commissioner's decision.[3] If the Commissioner's decision is supported by the evidence, then it is conclusive and must be upheld. *Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir. 1994).

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process.[4] The burden rests upon the plaintiff throughout the first four steps of this five-step process to prove disability, and if the plaintiff is successful in sustaining his burden at each of the first four levels, the burden then shifts to the Commissioner at step five.[5] First, the plaintiff must prove he is not currently engaged in substantial gainful activity.[6] Second, the Commissioner considers the medical severity of the claimant's impairment.[7] At step three the ALJ must conclude the plaintiff is disabled if he proves that his impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App.

---

[2] *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).

[3] *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).

[4] *See* 20 C.F.R. § 404.1520 (2007).

[5] *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).

[6] 20 C.F.R. § 404.1520(a)(4)(I) (2007).

[7] 20 C.F.R. § 404.1520(a)(4)(ii) (2007).

1, §§ 1.00-114.02 (1998).[8] Fourth, the Commissioner considers their assessment of the claimant's residual functional capacity, and the claimant bears the burden of proving he is incapable of meeting the physical and mental demands of his past relevant work.[9] If the plaintiff is successful at all four of the preceding steps the burden shifts to the Commissioner to prove, considering plaintiff's residual functional capacity, age, education and past work experience, that he is capable of performing other work.[10] If the Commissioner proves other work exists which the plaintiff can perform, the plaintiff is given the chance to prove that he cannot, in fact, perform that work.[11]

In this case, the ALJ thoroughly reviewed all evidence in the record. In particular, she reviewed Dr. Sloan's records that plaintiff complained of shortness of breath, that testing showed plaintiff had minimal obstructive lung defect, mild COPD and that plaintiff weighed 330 pounds, questioning plaintiff at the hearing about having gained weight since his accident. Docket 6, p. 37. In addition, she noted Dr. Culpepper's findings and their similarities to and differences from those of Dr. Sloan, as well as the record evidence that plaintiff had returned to light duty work after his accident but was let go because his employer was unable to continue allowing him to do light duty functions only. Docket 6, p. 20. Finally, the ALJ considered the state agency psychological consultant's limitations; she gave the plaintiff the benefit of the doubt in finding that he has some limitations not assessed by the state agency, and she adapted her RFC

---

[8] 20 C.F.R. § 404.1520(a)(4)(iii) (2007).

[9] 20 C.F.R. § 404.1520(a)(4)(iv) ( 2007).

[10] 20 C.F.R § 416.920(a)(4)(v); 20 C.F.R. § 404.1520(a)(4)(v) (2007).

[11] *Muse*, 925 F.2d at 789.

determination to eliminate jobs that require a strict production pace or lifting/carrying 10 pounds rather than the higher limits provided by Dr. Culpepper. *Id.*

The ALJ relied on the testimony of the VE to establish that the plaintiff is capable of performing other work, including sedentary occupations such as ticket seller, gate guard, and parking lot cashier. Docket 6, pp. 22, 55-60. The court finds no error in the ALJ's review of and reliance upon the evidence in the record. The ALJ's findings were properly documented in her decision, and her determination of plaintiff's RFC was within limits prescribed by Dr. Sloan and supported by the medical record. Finally, the ALJ properly relied on the VE's testimony at step five to find that the plaintiff was not disabled under the Act. None of the evidence in the record necessitated a determination to the contrary. See *Paul*, 29 F.3d at 210. Accordingly the court holds that the ALJ's decision was based on and supported by substantial evidence.

2. Consideration of obesity

According Social Security Ruling 02-1p, "[o]besity can cause limitation of function." SSR-02-1p, p. 6. Potential limitations include deterioration or impairment "in any of the exertional functions such as sitting, standing, walking, lifting, carrying, pushing, and pulling. . . .," as well as an individual's "ability to do postural functions, such as climbing, balance, stooping, and crouching." *Id.* Finally, "[t]he ability to tolerate extreme heat, humidity, or hazards may also be affected." *Id.* SSR 02-1p acknowledges that often obesity may affect an individual in a less than obvious manner, "[f]or example, some people with obesity also have sleep apnea." *Id.* Therefore the ruling requires an ALJ to assess the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment, taking into account fatigue or other combined effects of obesity which, with other

7

impairments, may be greater than might be expected without obesity. SSR - 02-1p, p.6. The plaintiff argues that because the ALJ failed to mention plaintiff's obesity, her decision is inherently flawed and unsupported. Docket 12. An ALJ indeed must consider the effects of obesity upon the plaintiff's abilities and impairments, but neither the SSR nor case law requires a specific citation to SSR 02-1p in order for a decision to be valid. *Clennon v. Commissioner*, 2013 WL 3213072 (W.D. La. June 24, 2013).

Case law within the Fifth Circuit holds that even if an ALJ's does not specifically mention SSR 02–1p, evidence that the ALJ considered the impact of obesity on plaintiff's ability to work in making her determination is sufficient. *Hobbs v. Astrue,* 627 F.Supp.2d 719, 727 (W.D.La. 2009) (although ALJ did not mention claimant's obesity or discuss the impact of her obesity on her ability to work, he did, in effect, consider the impact of claimant's obesity on her ability to work when he considered the impact of the physical symptoms caused or aggravated by her obesity); *see also Chapa v. Astrue,* 2012 WL 4797117, *15 (S.D.Tex.2012) ("Because the ALJ's RFC assessment contemplated all the evidence regarding plaintiff's health, and that evidence necessarily reflected the impact of his weight, the decision was supported by substantial evidence notwithstanding his failure to explicitly discuss plaintiff's obesity.").

In this case, the ALJ asked the plaintiff at the hearing about his weight (Docket 6, p. ), and plaintiff testified about his diabetes and its effects on his abilities (Docket 6, p.45), his breathing problems (Docket 6, p 44), his ability to walk, (Docket 6. P. 17), and his pain (Docket 6., p. 43-44). The ALJ's decision discussed plaintiff's pain, diabetes and gout and gave credibility to his stated limitations as a result of these problems. Docket 6, p. 14-15. Nevertheless, the ALJ determined that because "the record contained no evidence that the

8

claimant's recently diagnosed COPD and diabetes mellitus cause any significant functional limitations[,] said impairments are nonsevere." Docket 6, p.16. Finally, the ALJ noted that plaintiff had gone back to work at light duty after his accident and stopped working only because the employer could not accommodate the light duty restrictions, indicating plaintiff could perform such activities but was released because there was not a light duty option at his past employment. Still, the ALJ gave the plaintiff the "benefit of the doubt" in establishing his RFC and placed restrictions below the light duty level for lifting/carrying. Thus, although the ALJ did not specifically mention obesity in the decision, based on the record as a whole she found that plaintiff's weight-related impairments caused no other physical or mental limitations on his ability to do sustained work activities in an ordinary work setting, on a regular and continuing basis, which is what SSR 02-1p requires. Docket. 6, pp. 18-21; *See* SSR 02-1P, 2002 WL 34686281. Plaintiff's argument on this issue is without merit.

        3. Consideration of Dr. Sloan's opinion

Plaintiff also contends that the ALJ erred by not according proper weight to the opinions of plaintiff's primary physician, Dr. Sloan, meaning her RFC assessment was erroneous and unsupported by substantial evidence. First, Dr. Sloan's disability opinion is not a "medical opinion" within the meaning of 20 C.F.R. § 404.1527, but rather an opinion on an issue reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(d); *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003). Second, the Fifth Circuit has very clearly stated the approach an ALJ must take in according weight to a treating physician's opinion:

> [A]bsent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2).

9

> Additionally, if the ALJ determines that the treating physician's records are inconclusive or otherwise inadequate to receive controlling weight, absent other medical opinion evidence based on personal examination or treatment of the claimant, the ALJ must seek clarification or additional evidence from the treating physician in accordance with 20 C.F.R. § 404.1512(e).

*Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000) (emphasis in original).

Plaintiff argues that the court should remand this case because the ALJ erroneously found fault with the "worthy," chronologically relevant "observations and opinions" of Dr. Sloan, a physician who is in "good standing." However an ALJ may assign little or no weight to a treating physician's opinion if the opinion is brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence. *See Perez v. Barnhart*, 415 F.3d 457, 465-66 (5th. Cir. 2005); *Newton v. Apfel*, 209 F.3d 455-56. Quite simply, the ALJ notes that Dr. Sloan's assessment on January 16, 2011 (Docket 6, p. 560-561), in which he concluded that the plaintiff has a "permanent disability," is wholly inconsistent with his medical records from December 2011, which encourage plaintiff to walk for exercise and weight loss. Docket 6, p. 20. The Fifth Circuit has held that an ALJ may afford little or lesser weight to the opinions of a treating physician for "good cause." *See Greenspan v. Shalala*, 38 F.3d 232, 237-238 (5th Cir. 1994). Under *Greenspan*, the Fifth Circuit recognized several good cause exceptions, including "disregarding statements that are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence." *Greenspan* 38 F.3d at 237, citing *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985).

Even if Dr. Sloan had worthy medical opinions, the ALJ is not required to afford them controlling weight if they are not supported by the evidence in the record. In the court's view,

10

Dr. Sloan's opinion falls within that good cause exception, and the ALJ had the aurthority to afford it lesser weight. The ALJ correctly relied on Drs. Culpepper, Savell and the testimony of the planintiff and his work history both before and after his accident more heavily than Dr. Sloan's medical diagnosis; furthermore, insofar as Dr. Sloan's opinion amounts to the legal determination of disability, this is an area which is reserved exclusively to the ALJ and need not be afforded any weight. *Chambliss v. Massinari,* 269 F.3d 520 (5th Cir. 2001). The court holds that the ALJ's decision applied proper legal standards and is supported by substantial evidence. *See also Reynolds v. Astrue*, 2010 WL 583918 (N.D. Miss. Feb. 16, 2010).

    4.   Evaluation at Step Five of "other work" plaintiff could perform

Plaintiff argues that the ALJ's step four finding that the plaintiff was unable to perform his past relevant work, which included work as a cashier, would necessarily prohibit from plaintiff from working as a gate guard, parking lot cashier or ticket seller, as the ALJ determined at step five, because the work requirements would be similar.

A VE is called to testify because of her familiarity with job requirements and working conditions. *Fields v. Bowen,* 805 F.2d 1168, 1170 (5th Cir.1986). "The value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed." *Id.* At the hearing, VE Barbara Holmes explained that she determined the availability of the gate guard, parking lot cashier and ticker seller jobs in the national economy by referring to the Dictionary of Occupational Titles (DOT), in conjunction with additional sources. Docket 6, pp. 55-60. The ALJ provided the VE with hypothetical situations similar to the plaintiff's circumstances, from which the VE determined that there were jobs in the national economy that a person with those limitations could perform.

The ALJ was entitled to rely on this testimony and the VE's expertise. *Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995). The plaintiff has failed to proffer evidence to the contrary. Accordingly, the undersigned finds that plaintiff's argument on this point must also fail.

## CONCLUSION

For the foregoing reasons, the court concludes that the Commissioner's final decision should be affirmed. A separate judgment affirming the Commissioner's final decision will issue simultaneously with this Memorandum Opinion.

This, the 5th day of November, 2014.


`          s/ S. Allan Alexander
                U.S. MAGISTRATE JUDGE